1

2

3

4

5           IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8  ATIK PATHAN,                    )        C 05-2124 TEH (PR)
                                   )
9            Petitioner,           )        **ORDER DENYING**
                                   )        **PETITION FOR WRIT**
10     vs.                         )        **OF HABEAS CORPUS**
                                   )        **AND INSTRUCTIONS**
11  TOM CAREY, Warden,             )        **TO THE CLERK**
                                   )
12           Respondent.           )
   ――――――――――――――――――――――          )

13

14                          **INTRODUCTION**

15          Atik Pathan, a state prisoner currently incarcerated at California State Prison,

16  Solano, has filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2254.

17  On July 28, 2005, this Court issued an order to show cause. On November 17, 2005,

18  Respondent filed an answer to the petition.  On March 21, 2005, Petitioner filed a

19  motion seeking a "stay and abeyance" to exhaust additional claims in the state courts,

20  which was denied. This order denies the petition for writ of habeas corpus on the

21  merits.

22                     **PROCEDURAL BACKGROUND**

23          Petitioner was convicted by a jury in the Superior Court of Santa Clara County

24  of two counts of aggravated sexual assault on a child under 14 years old and 10 or

25  more years younger than Petitioner (counts 1 & 2, Cal Penal Code § 269), six counts of

26  a lewd or lascivious act on a child under 14 years old (counts 3-8, Cal. Penal Code §

27  288(a)), and one count of continuous sexual abuse of a child under 14 years old (count

28  9, Cal. Penal Code § 288.5(a)).

On January 5, 2001 Petitioner was sentenced to a prison term of 15 years to life for count 1, with a concurrent 12-year term for count 9. The trial court dismissed count 2 and stayed the terms for counts 3-8 pursuant to California Penal Code §§ 1385 and 654.

On December 13, 2002, the California Court of Appeal reversed the judgment of the trial court and remanded the matter for re-sentencing.  The state appellate court rejected all of Petitioner's non-sentencing claims: that his statements to the victim's father should have been suppressed; that his confession should have been suppressed; that there was insufficient evidence to support the aggravated sexual assault convictions; and that the trial court gave erroneous jury instructions on sodomy. However, it held that Penal Code § 288.5(c) precludes conviction of both continuous sexual abuse (count 9) and individual sexual offenses (counts 1-8) concerning the same victim and during the same period. The court remanded for re-sentencing, "to permit the trial court to decide whether to strike the continuous sexual abuse count or the individual sex offense counts" and "to allow the trial court to resentence defendant on the remaining count or counts." People v. Pathan, No. H022600, 2002 Cal. App. Unpub. LEXIS 11875, at *34 (Cal. Ct. App. Dec. 13, 2002).  On February 25, 2003, the Supreme Court of California denied review of the appellate court's decision.

On May 1, 2003, the trial court re-sentenced Petitioner to a term of 15 years to life for one count of aggravated sexual assault on a child (count 1, Cal. Penal Code § 269), dismissed the second count of aggravated sexual assault on a child (count 2), stayed the terms for six counts of lewd or lascivious acts on a child (counts 3-8, Cal. Penal Code § 288(a)), and struck the conviction for continuous sexual abuse of a child (count 9, Cal. Penal Code § 288.5(a)).

On April 8, 2004, the California Court of Appeal affirmed the judgment of the trial court and denied a petition for writ of habeas corpus filed by the Petitioner's

2

1  appointed counsel.  On June 16 and July 14, 2004, the Supreme Court of California

2  denied review of both decisions of the California Court of Appeal.  Petitioner filed a

3  habeas petition in this Court on May 24, 2005.

4  **FACTUAL BACKGROUND**

5       The facts underlying the charged offenses as found by the State of California,

6  Sixth Appellate District, are summarized as follows:

> Defendant is a native of India whose primary language is Hindi. In
> January of 1998, Nasir R. hired defendant to teach Islamic religion to his
> children. Shaikh R., his son, was 10 years old at the time. Defendant
> taught Shaikh two to three days per week, for one hour at a time, except
> for a few months when defendant was in India, through June of 1999.
>
> According to Shaikh, on two to 10 occasions, defendant touched Shaikh's
> penis with his hand. Defendant would sometimes rub his own penis on
> the front of Shaikh's body. Defendant would also touch Shaikh's butt.
> Defendant had Shaikh touch defendant's penis on many occasions.
> Defendant would grab Shaikh's hand, place it on defendant's penis, and
> pat it. Defendant's penis would get hard and Shaikh would feel
> 'something sticky' come out of it. These incidents occurred 'most of the
> times' that defendant came over to tutor Shaikh. Defendant would
> sometimes talk to Shaikh about the religious lesson during the touchings.
>
> Shaikh described a specific touching in the family room. Defendant had
> instructed Shaikh to perform a push-up exercise, so that Shaikh was
> kneeling with his chest pressed against the back of the sofa. Defendant
> touched Shaikh's penis.
>
> Shaikh described another touching, in the upstairs study. Shaikh was
> lying face-down pursuant to defendant's instructions for another exercise.
> Defendant told Shaikh to move his butt up and down. Defendant sat on
> Shaikh's legs and rubbed his penis 'in the crack' of Shaikh's butt. Shaikh
> tried to move away 'when he was trying to penetrate,' because it hurt.
> Defendant's penis did not go into Shaikh's anus, but it 'put pressure on'
> the anus. Defendant tried to do the same thing the next day, but Shaikh
> made an excuse about having to go to the bathroom. On more than 20
> other occasions, defendant rubbed his penis against Shaikh's butt but did
> not try to penetrate.
>
> Shaikh wanted to tell defendant that he didn't want to do the exercises,
> but he 'didn't have the guts to.' Shaikh felt 'some sort of fear inside
> [himself].'
>
> On June 18, 1999, Nasir R. called defendant on the telephone. Nasir R.
> said that 'something very wrong has happened' and asked to talk to
> defendant about it. Defendant told him, 'I just want to apologize for my

act and please excuse me for it.' Nasir R. asked defendant to come over for a discussion.

On June 20, 1999, defendant came to Nasir R.'s house, where he spoke with Nasir R. and Sahibzada Rafeeqi.  Nasir R. asked defendant what he had apologized for on the telephone. Defendant said, 'I was doing something wrong and I was apologizing for that.' He said, 'I was teaching [Shaikh] to do physical exercises.'  Nasir R. asked if defendant had uncovered his penis and inserted it into Shaikh's anus.  Defendant admitted that he had, but stated, 'I didn't have intercourse.' Defendant then broke down, weeping.  At some point during their conversation, Nasir R. and Rafeeqi told defendant that he should remember 'that he is in front of God Almighty.'  However, neither Nasir R. nor Rafeeqi threatened defendant in any way.

During the conversation, a few other people were present in an adjoining hallway.  Defendant had been teaching their children also.  These people came into the room about 10 or 15 minutes into the conversation.  Nasir R. wrote out a statement in English and translated it out loud in front of the group.  Defendant said he understood and signed the statement.  The statement read: 'On June 20, 1999, I, Atik Hareem Pathan, accept the guilt of sodomy against a minor child [Shaikh], under the years of 12 years of age.'  Nasir R. told defendant that sodomy meant 'pushing the penis into the anus.'

After defendant signed the statement, Nasir R. asked for defendant's green card.  Defendant gave it to him.  The group discussed telling defendant's father what he had done.  They also asked defendant what would be the punishment for his offenses in the Islamic religion.  Defendant said 'it was a very serious crime and the police would give 80 lashes.'

Defendant was arrested on June 23, 1999, by Palo Alto Police Officer Ron Watson.  The Palo Alto police contacted Milpitas Police Officer Raj Maharaj, who is a native speaker of Hindi and certified to translate Hindi to English.  Before participating in the interview of defendant, he had translated about 25 other times.  Although Officer Maharaj learned Hindi in Fuji and therefore spoke a different dialect, defendant appeared to understand him during the interview.  Palo Alto Police Officer Jean Bready also participated in the interview.  She spoke English to defendant, and defendant responded in English during 'a vast majority' of the interview.  Officer Maharaj assisted defendant with words he did not understand.

Officer Maharaj read defendant the Miranda advisements in Hindi.  However, he used the English word 'attorney' because he did not know the Hindi word for attorney.  Officer Maharaj did not know that in India, attorneys are called advocates.  Defendant asked if he could speak with a friend.  Officer Maharaj asked if the person was an attorney, again using the English word.  Defendant said no, so Officer Maharaj said he could call the person after the interview.  Defendant asked Officer Maharaj

4

1    what would happen if he did not talk to the police.  Officer Maharaj said
     that defendant would be booked into jail and possibly handcuffed.

2
     Officer Bready asked defendant to tell her 'some of the things that you
3    did which you know were wrong.'  Defendant described how he would
     get behind Shaikh and tell Shaikh to do his push-ups so that Shaikh's
4    bottom came into contact with defendant's body.  Defendant asserted that
     this happened 'just one time.'  Defendant also described how sometimes
5    Shaikh would take his hand and touch defendant's penis, but he claimed
     this happened 'by accident.'

6
     Officer Bready told defendant that 'because of what happened,' Shaikh
7    was 'very, very sad' and felt that defendant 'betrayed him.'  She explained
     that Shaikh felt that 'he did something wrong' and was 'at fault for what
8    happened.'  She told defendant that he needed to tell the truth, asking
     him, 'it was more than one time, wasn't it?'  When Officer Bready
9    reiterated that defendant needed to tell the truth in order to 'help that
     boy,' defendant admitted that he placed Shaikh's hand on his penis 'two
0    or three times.'  Defendant also admitted that he rubbed his penis against
     Shaikh's buttocks with sexual intent 'two or three times.'  However,
1    defendant denied that he had tried to insert his penis into Shaikh's
     buttocks.  He denied having Shaikh put his mouth on defendant's penis.
2    He denied touching Shaikh's penis intentionally, claiming it happened
     once 'by accident.'

3
     At the end of the interview, Officer Bready asked defendant if he had any
4    questions.  Defendant stated that he was worried about his family.  He
     said, 'I know what, what I did is wrong. This is my own fault.'  He said
5    that evil had gotten control over him.  He said he was 'really sorry.'
     Officer Bready suggested that it might help defendant feel better if he
6    wrote a letter of apology to Shaikh and his family.  She told him, 'You
     say whatever comes from your heart.'  Defendant asked if such a letter
7    would help him.  Officer Bready said, 'I can't promise that it, it will help
     the court case any, but I think it would make you feel better in your heart
8    if you have the opportunity.'  She explained that defendant would be
     booked into jail and would have to go to court, but would not be allowed
9    any contact with Shaikh or his family other than a letter.

20   <u>People v. Pathan</u>, No. H022600, 2002 Cal. App. Unpub. LEXIS 11875, at *34 (Cal. Ct.

21   App. Dec. 13, 2002).

22                         <u>**SENTENCING PROCEEDINGS**</u>

23   I.     <u>Initial Sentencing</u>

24          At the initial sentencing on January 5, 2001, the trial court began by listing

25   supplemental documents considered in preparation for the hearing, including the

26   probation report, a letter from the victim's mother, a letter from defendant, letters from

27

28                                          5

1   eight concerned individuals and a statement in aggravation prepared by the

2   prosecution. The court then identified what it viewed as the two central issues at

3   sentencing:

4   > [W]hether the court … is required to impose both [15-year-to-life terms].
>   And even if the court has the authority to strike one of them … whether

5   > the court should. And then, the other question is the aggravated or the
>   mid terms, or the mitigated terms on … counts … three through nine.

6   > Reporter's Transcript ("RT") at 759.

7       Defense counsel successfully argued that the court had the authority not to

8   impose both counts and that it should exercise that discretion.  Counsel emphasized

9   that Petitioner was relatively young, had no prior criminal record and that while he had

10  an opportunity to molest other children, he had not.  Id. at 760.  Counsel also pointed

11  to a letter from the victim's parents asking for leniency, adding, "I think that ought to

12  be considered strongly by the court in imposing sentence." Id. at 761.

13      In reply and in support of imposing a maximum sentence, the prosecution

14  reiterated portions of its statement in aggravation, including that defendant's acts were

15  multiple and had escalated to sodomy by force and duress and that defendant picked

16  his victim because he was "particularly vulnerable."  Id. at 763.  The prosecution also

17  addressed the "large number of letters from the community" and the letter from the

18  victim's parents, positing that the letter from the victim's parents was a product of

19  community pressure (evidenced by statements in the record and by a number of the

20  letters from the community) and should be treated accordingly.  Id. at 764-65.  The

21  prosecution further argued, "given the trust and authority that he [defendant] had in the

22  community, that he had in … victim's house, and that he abused not just once, not

23  twice, but multiple times over the course of a year and a half," the court should impose

24  the "absolutely maximum sentence."  Id. at 765.

25      The probation officer recommended that the court strike count two, providing

26  the following explanation for the recommendation:

27

28                                     6

> [A]lthough this is a very serious case, the defendant is relatively young, has no prior record, appeared to be extremely remorseful for his behavior, and in light of the parent's request for leniency.

> Also … it appears that the victim's mother stated that the defendant [sic] was disturbed at the beginning of the situation, but after two or three weeks had been doing well, overall, and in school, and she was thankful for that, and he was not involved in any kind of counseling at this time. Id. at 769.

Having considered all of the above, the court ruled as follows:

> I know that I was the trial judge in this case, and I certainly believe that, at least with respect to count one, that is an appropriate sentence … And the court will impose a sentence of 15 years to life for count one.

> With respect to count two, based on the defendant's extreme remorse and based on the request for leniency on the part of the victim and the victim's family, the defendant's lack of a record, any prior criminal record, and his – in the community, I will grant the defense motion to strike count two, pursuant to penal code section 1385 … Id. at 770.

The judge then proceeded to impose the mid term on all the remaining counts (counts three to nine), which were stayed pursuant to Penal Code § 654, which precludes the punishment of one act under multiple provisions, where the same act is punishable in different ways by different provisions of law.

II.    Re-sentencing

At re-sentencing on May 1, 2003, Petitioner's brother, Obed Pathan, addressed the court on behalf of Petitioner's family. He proposed that Petitioner be deported to India rather than incarcerated, "humbly request[ing] that … [the court] give [his brother] one more chance to live his life with his family."  Reporter's Transcript of Proceedings Probation and Sentence ("Re-sentencing RT") at 5-6.  The family had allegedly consulted professionals about Petitioner's "problem" and believed that if deported, he would not "do it again." Id.  In India, Petitioner would be reunited with his young, financially dependent wife and son and placed among a vigilant community. He would also have the intimacy of his wife and "not be tested." Id. at 6. "[E]verybody in our family and in the India community knows about his problem, knows about the disease and will watch him like a hawk and make sure that he does

1    not do it again." Id. Petitioner's brother also emphasized that this was Petitioner's first

2    offense.

3          Following Obed Pathan's statements, the matter was submitted and the court

4    ruled as follows:

5

6         All right. Well, my sympathy goes out to the defendant. I think the acts
in this case were … multiple acts. It wasn't just one, isolated incident.
Multiple acts. He betrayed the position of trust. He had access to the

7         home because of the fact that he was a spiritual guidance [sic]. And I
think that this is just pretty egregious conduct because of that and

8         because of the fact that this young man, who was the victim, has to have
been traumatized because the person who perpetrated these acts on him

9         is someone that the family trusted and looked up to.
So for Count 1, I'm imposing the term of 15 years to life[.] Id. at 7.

10

11                       **STANDARD OF REVIEW**

12          This court may entertain a petition for a writ of habeas corpus "in behalf of a

13    person in custody pursuant to the judgment of a state court only on the ground that he

14    is in custody in violation of the Constitution or laws or treaties of the United States."

15    28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that

16    was adjudicated on the merits in state court unless the state court's adjudication of the

17    claim: "(1) resulted in a decision that was contrary to,  or involved an unreasonable

18    application of, clearly established Federal law, as determined by the Supreme Court of

19    the United States; or (2) resulted in a decision that was based on an unreasonable

20    determination of the facts in light of the evidence presented in the State court

21    proceeding." Id. § 2254(d).

22          Under the 'contrary to' clause, a federal habeas court may grant the writ if a

23    state court arrives at a conclusion opposite to that reached by the Supreme Court on a

24    question of law or if the state court decides a case differently than the Supreme Court

25    has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362,

26    412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court

27    may grant the writ if a state court identifies the correct governing legal principle from

28

the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.  As summarized by the Ninth Circuit: "A state court's decision can involve an 'unreasonable application' of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Van Tran v. Lindsey, 212 F.3d 1143, 1150 (9th Cir. 2000) overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003) (citing Williams, 529 U.S. at 405-07).

In deciding whether the state court's decision is contrary to, or an unreasonable application of clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of Petitioner's claim in a reasoned decision.  LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

Summary denials of a Petitioner's claims in state court are adjudications on the merits. Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002), amended 311 F.3d 928 (9th Cir. 2002).  However, where state courts fail to provide a reasoned explanation for their denials, "we [the district courts] must conduct 'an independent review of the record ... to determine whether the state court clearly erred in its application of controlling federal law.'" Fisher v. Roe, 263 F.3d 906, 914 (9th Cir. 2001) (alteration in original) (quoting Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000)).

Finally, even if a constitutional error occurred, habeas relief is only warranted if that error is structural error or had a  "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795-96 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

1  <u>**DISCUSSION**</u>

2    I. **Ineffective Assistance of Counsel Claim**

3        Petitioner claims that he was deprived of effective assistance of counsel at re-

4  sentencing because defense counsel failed to properly investigate his case and to

5  present "mitigating" factors to the court.  Specifically, Petitioner claims that defense

6  counsel failed to call the victim's family to testify as witnesses in his defense and that

7  had counsel done so, the victim's father was willing and ready to testify that the victim

8  "Shaikh, has been doing well and has not shown any long term effects [from] Pathan's

9  inappropriate touching" and "that my family requests leniency in the terms of re-

10  sentencing to whatever extent allowed as per statutes of California law."  Raheem

11  Decl. at 2.  Petitioner further asserts that "this testimony would have allowed the [re-

12  sentencing] court to sentence petitioner pursuant to P.C. 286," a lesser included offense

13  to California Penal Code § 269, or pursuant to Cal. P.C. § 264.1, also a lesser offense.

14        The question raised here is whether defense counsel's failure to investigate and

15  present the evidence highlighted by Petitioner and counsel's failure to argue for

16  sentencing on a lesser offense amounted to constitutionally deficient performance, and,

17  if so, whether Petitioner was prejudiced by the alleged deficiency.

18        1.    Legal Standard

19

20        The Supreme Court has not decided what standard should apply to counsel's

21  performance in non-capital sentencing proceedings. <u>Cooper-Smith v. Palmateer</u>, 397

22  F.3d 1236, 1244 (9th Cir.), <u>cert. denied</u>, 126 S. Ct. 442 (2005). <u>Strickland</u> declined to

23  "'consider the role of counsel in an ordinary sentencing, which … may require a

24  different approach to the definition of constitutionally effective assistance.'" <u>Id.</u>

25  (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984)).  Nor has any later

26  Supreme Court decision considered, let alone determined, the matter.  <u>Id.</u>

27  Consequently, there is no clearly established Supreme Court precedent governing

28                                          10

1    ineffective assistance of counsel claims in the noncapital sentencing context.  <u>See</u>

2    <u>Davis v. Grigas</u>, 443 F.3d 1155, 1157-59 (9th Cir. 2006) (holding no clearly

3    established federal law in the sentencing context where petitioner alleged ineffective

4    assistance of counsel at sentencing based on counsel's failure to investigate or present

5    mitigating evidence); <u>Cooper-Smith</u>, 397 F.3d at 1244-45.

6         However, under the <u>Strickland</u> ineffective assistance standard, a petitioner must

7    establish both that defense counsel's performance was deficient and that said

8    deficiency prejudiced his case.  If a petitioner fails to establish either of these two

9    elements, his claim of ineffective assistance fails and the court need not make any

10    determination as to the other element.  <u>See</u> <u>Siripongs v. Calderon</u>, 133 F.3d 732, 737

11    (9th Cir. 1998).

12         To establish deficient performance, a defendant must show that counsel's

13    representation fell below an "objective standard of reasonableness" under prevailing

14    professional norms.  <u>Strickland</u>, 466 U.S. at 687-88.  The relevant inquiry is not what

15    defense counsel could have done, but rather whether the choices made by defense

16    counsel were reasonable.  <u>See</u> <u>Babbitt v. Calderon</u>, 151 F.3d 1170, 1173 (9th Cir.

17    1998).  Judicial scrutiny of counsel's performance must be highly deferential, and a

18    court must indulge a strong presumption that counsel's conduct falls within the wide

19    range of reasonable professional assistance.  <u>See</u> <u>Strickland</u>, 466 U.S. at 689; <u>Wildman</u>

20    <u>v. Johnson</u>, 261 F.3d 832, 838 (9th Cir. 2001) (finding no deficient performance by

21    counsel who did not retain a ballistics expert on a menacing charge where the same

22    expert had been used in the successful defense of the same defendant on a felon-in-

23    possession charge).

24         Second, the defendant must show that counsel's errors were so serious as to

25    deprive the defendant of a fair trial, a trial whose result is reliable.  <u>Strickland</u>, 466

26    U.S. at 688.  The test for prejudice is not outcome-determinative, i.e., defendant need

27

28                                     11

1   not show that the deficient conduct more likely than not altered the outcome of the

2   case; however, a simple showing that the defense was impaired is also not sufficient.

3   Id. at 693.  The defendant must show that there is a reasonable probability that, but for

4   counsel's unprofessional errors, the result of the proceeding would have been different;

5   a reasonable probability is a probability sufficient to undermine confidence in the

6   outcome.  Id. at 694.  To establish prejudice caused by the failure to investigate or call

7   a witness, a Petitioner must show, among other things, that the absence of the witness'

8   testimony created a reasonable probability that the Court would have applied a

9   sentence more favorable to the Petitioner.  See Alcala v. Woodford, 334 F.3d 862, 872-

10   73.

11         2.      Analysis

12         In this case, a jury found Petitioner guilty of multiple sex offenses involving the

13   same juvenile victim, including two counts of California Penal Code § 269, each of

14   which carries a mandatory sentence of 15 years to life.  On appeal, the state appellate

15   court rejected Petitioner's non-sentencing claims (including his claim that there was

16   insufficient evidence to support his § 269 convictions), instead remanding to permit the

17   trial court to decide "whether to strike the continuous sexual abuse count [§ 288.5(a)]

18   or the individual sex offense counts [including § 269]" and "to allow the trial court to

19   re-sentence defendant on the remaining count or counts."  Pathan, 2002 Cal. App.

20   Unpub. LEXIS at *34.   In remanding, the appellate court instructed the trial court to

21   be guided by People v. Torres, 102 Cal.App.4th 1053, and People v. Alvarez, 100

22   Cal.App.4th 1170.

23         Torres and Alvarez hold that a defendant should be re-sentenced on the

24   alternative offenses that are "most commensurate with his culpability."  See e.g. Torres,

25   102 Cal.App.4th at 1059.  Petitioner argues that the court should have been informed

26   of evidence relevant to his culpability such as possible mitigating or aggravating

27

28                                          12

1    evidence because the re-sentencing court had discretion to choose between alternative

2    offenses.  However, here, the sentencing court was so informed: the same judge tried

3    and initially sentenced Petitioner and at re-sentencing, the judge discussed the evidence

4    presented at the earlier proceedings, including Petitioner's culpability, which included

5    arguments made by defense counsel against the court imposing a maximum sentence,

6    and chose to vacate the sentence under the continuous sexual abuse count (a 12 year

7    term) and impose the same term on count one that she had imposed at the earlier

8    sentencing.

9          The Ninth Circuit has determined that <u>Strickland</u> is not clearly established law

10   applicable to claims of ineffective assistance of counsel at sentencing.  <u>Davis</u>, 443 F.3d

11   at 1158.  However, even if the <u>Strickland</u> standard applied, Petitioner's claim still fails.

12   Among the mitigating evidence presented by defense counsel at the initial sentencing

13   hearing was a letter from the victim's parents requesting leniency as well as argument

14   that Petitioner was relatively young, had no prior record and had not molested any

15   other children.  Also, at the initial hearing, the probation officer for the case stated for

16   the record, "that the victim's mother stated that the defendant [sic] was disturbed at the

17   beginning of this situation [after he first reported the sexual abuse to his parents], but

18   that after two or three weeks he had been doing well, overall, and in school, and she

19   was thankful for that, and he was not involved in any kind of counseling at this time."

20   This testimony was also included in the probation department's supplemental

21   probation report to the re-sentencing court (recommending a sentence of fifteen years

22   to life).  Moreover, at the initial sentencing, prior to striking count two (the second §

23   269 count facing Petitioner), the Judge stated clearly, "I certainly believe that, at least

24   with respect to count one [the first § 269 count], that is an appropriate sentence."

25   Viewed in light of this evidence, it is impossible to conclude that defense counsel

26   failed to introduce sufficient evidence relevant to Petitioner's culpability at re-

27

28                                              13

1   sentencing, where the evidence that he contends counsel failed to offer at the re-

2   sentencing was already before the sentencing court.  It cannot be said that counsel's

3   assistance was ineffective in this regard.

4          This conclusion is further supported by Eggleston v. United States, 798 F.2d

5   374, 376 (9th Cir. 1986), which holds that a claim of failure to interview a witness

6   cannot establish ineffective assistance when the person's account is otherwise fairly

7   known to defense counsel.  The father's request for leniency was absolutely known to

8   defense counsel as well as to the court.  Similarly, the boy's alleged recovery was

9   made fairly known by the victim's mother's statement that, "after two or three weeks

10  [Shaikh] had been doing well, overall." Defense counsel clearly fairly knew the

11  family's account of the boy's recovery and its desire that Petitioner be sentenced

12  leniently.  Further, this information was before the sentencing court.

13         Even if Eggleston did not apply, the victim's father's account is so akin to

14  earlier statements before the sentencing court, that it is unreasonable to argue that

15  defense counsel's failure regarding this testimony amounts to ineffective assistance,

16  much less that it prejudiced the case.  Petitioner's defense gains virtually nothing from

17  the father's account.  As noted, the re-sentencing judge did not need the father's

18  testimony to be informed of the boy's alleged recovery or of the family's request for

19  leniency.  At most, this testimony would have provided the court an update as to the

20  family's view of the victim's recovery and reinforced its position regarding leniency.

21  It is likely that any leniency the father's testimony might have garnered had already

22  been granted by the judge based on similar testimony at the initial sentencing.  See RT

23  at 769-70 (imposing one §269 count as "certainly … appropriate" but dismissing a

24  second, "based on the defendant's extreme remorse and based on the request for

25  leniency on the part of the victim and the victim's family …").

26

27

28                                          14

1    Finally, Petitioner also claims that defense counsel should have argued for

2    sentencing on some lesser offense (one for which he had not been convicted by the

3    jury).  Petitioner alleges that but for this alleged deficiency, the court would have re-

4    sentenced him on such a lesser offense.  However, Petitioner has not established that

5    the sentencing judge had such discretion upon remand, or that it is reasonably probable

6    that she would have exercised that discretion based on the evidence Petitioner

7    complains was not presented.  The re-sentencing court had already been presented with

8    similar evidence.  Nothing Petitioner has presented to this Court suggests that

9    Petitioner was prejudiced, specifically that there is a reasonable probability that but for

10   the alleged deficiencies in defense counsel's performance, the re-sentencing court

11   would have sentenced Petitioner on a lesser offense.  As such, the state courts' denial

12   of Petitioner's claim of ineffective assistance was not contrary to, or an unreasonable

13   interpretation of established Supreme Court precedent.

14   **II. Abuse of Discretion**

15   Petitioner also claims that the re-sentencing court abused its discretion by re-

16   sentencing him on the basis of facts not introduced into evidence, specifically that the

17   crime was "pretty egregious" and that the victim "has to be traumatized."  Re-

18   sentencing RT at 22-24.

19          1.    Legal Standard

20   State sentencing courts must be accorded wide latitude in their decisions

21   as to punishment.  See Walker v. Endell, 850 F.2d 470, 476 (9th Cir. 1987), cert.

22   denied, 488 U.S. 926, and cert. denied, 488 U.S. 981 (1988).  Generally, therefore, a

23   federal court may not review a state sentence that is within statutory limits. See id.

24   There are, however, exceptions to this general rule; for example, the constitutional

25   guarantee of due process is fully applicable at sentencing.  See Gardner v. Florida, 430

26   U.S. 349, 358 (1977).  Thus, a federal court may vacate a state sentence imposed in

27

28                                              15

1   violation of due process, such as (1) if a state trial judge imposed a sentence in excess

2   of state law, *see Walker*, 850 F.2d at 476, or (2) enhanced a sentence based on

3   materially false or unreliable information or based on a conviction infected by

4   constitutional error.

5       State law also may guarantee a defendant certain procedural rights at sentencing

6   which may not be arbitrarily denied without violating due process.  See Hicks v.

7   Oklahoma, 447 U.S. 343, 346 (1980) (defendant may not be arbitrarily denied state-

8   created liberty interest in sentencing procedure); Fetterly v. Paskett, 997 F.2d 1295,

9   1300 (9th Cir. 1993) (when state provides specific method for determining whether

10  certain sentence shall be imposed, "'it is not correct to say that the defendant's interest

11  in having that method adhered to 'is merely a matter of state procedural law'").

12  However, a federal court may not review a claim that a state court failed to state its

13  reasoning for a particular sentence pursuant to state law when the sentence imposed

14  was clearly within its discretion.  See Cacoperdo v. Demosthenes, 37 F.3d 504 , 507

15  (9th Cir. 1994) (failure to abide by state requirement that trial court state reasons for

16  sentencing consecutively does not rise to level of federal habeas due process claim;

17  Branch v. Cupp, 736 F.2d 533, 536 (9th Cir. 1984).

18          2.      Analysis

19          According to state law, the sentence imposed by the re-sentencing court

20  on count 1 in this case was clearly within its discretion: 15 years to life is the only

21  sentence available under § 269, one of several counts of which Petitioner was

22  convicted after a jury trial.  Thus, unless Petitioner establishes that there was the type

23  of violation that creates an exception to the general rule prohibiting federal review of

24  state sentencing decisions that are within statutory limits, his claim must fail.

25          The appellate court denied all of Petitioner's non-sentencing claims, including

26  that the evidence was insufficient to support his § 269 convictions. *Pathan*, 2002 Cal.

27

28                                          16

1    App. Unpub. *LEXIS 11875. Additionally, Petitioner has not established that a re-

2    sentencing judge may not express her opinion as to the nature of a crime or its effect

3    on a victim, here a then 10 year old boy, particularly where that opinion is well-

4    founded in the record.  Thus, to the extent that Petitioner might have based his claim

5    on any of these arguments for federal review, his claim fails.

6         Likewise, if Petitioner is arguing that the re-sentencing court deprived him of a

7    due process right guaranteed by Torres, 102 Cal. App.4th  1053, and Alvarez, 100

8    Cal.App.4th 1170, his claim fails.  On remand, the re-sentencing court was directed to

9    be guided by Torres and Alvarez.  These decisions held that in circumstances such as

10   this case, a re-sentencing court should sentence based on those counts most

11   "commensurate with [defendant's] culpability."  Here, the re-sentencing judge

12   appropriately considered the evidence, noting that Petitioner's acts were multiple, that

13   he had access to the home because he was a spiritual guide, that the family trusted and

14   looked up to him, and that Petitioner had betrayed his position of trust.  Not only does

15   this evidence explain and support the judge's statements that the crime was "pretty

16   egregious" and that the victim "has to be traumatized," but is sufficient to justify her

17   decision to sentence Petitioner on § 269 instead of § 288.5(a), finding that sentencing

18   based on § 269 was more "commensurate" with Petitioner's culpability.

19        Moreover, at the initial sentencing hearing, the judge heard argument from the

20   prosecution in favor of applying the maximum possible sentence.  This argument

21   included: that Petitioner was convicted of multiple acts over the course of a year and

22   half, that the victim was particularly vulnerable and that Petitioner picked the victim

23   and not others for that very reason, that the nature of the molestations escalated, that as

24   a result of the case the victim's family had been isolated from their community, that

25   many in the community did not believe the victim and that a number of them had either

26   openly turned against the family and/or pressured the family to lessen Petitioner's

27

28                                              17

1  sentence.  While the judge may not have had all of these arguments in mind, they

2  certainly support her statements and sentencing decision.  Thus, Petitioner's claim of

3  abuse of discretion fails.  Petitioner has not established that the judge's statements

4  violated due process or in any other way contravene state or federal law.

5                                          **CONCLUSION**

6          The state courts that considered these claims issued summary denials. As such,

7  this court has conducted an independent review of the record to determine whether the

8  state court's adjudication of the claim: "(1) resulted in a decision that was contrary to,

9  or involved an unreasonable application of, clearly established Federal law, as

10 determined by the Supreme Court of the United States; or (2) resulted in a decision that

11 was based on an unreasonable determination of the facts in light of the evidence

12 presented in the State court proceeding."  Id. § 2254(d). The state court did not commit

13 such error and, accordingly, this Court joins it in denying Petitioner's claims.  For the

14 foregoing reasons, the petition for writ of habeas corpus is DENIED.  The Clerk shall

15 close the file and enter judgment in accordance with this order.

16         IT IS SO ORDERED.

17 Dated:  10/16/07

18                                              Thelton E. Henderson
                                               United States District Judge

19

20

21

22

23

24

25

26

27

28                                          18